UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-157

JOE HAND PROMOTIONS, INC., as
Broadcast Licensee of the September 6, 2008,
UFC #88 Broadcast                                                                    PLAINTIFF

v.

FRANK YOUNG, Individually, and as officer,
director, shareholder and/or principal of
BONEY KNEES, INC., d/b/a FROGGY'S
SPORTS BAR ON THE POST FORT CAMPBELL,
a/k/a FROGGY'S SPORTS BAR, a/k/a FROGGY'S
SPORTS BAR & GRILL, a/k/a FROGGY'S, and
BONEY KNEES, INC., d/b/a FROGGY'S SPORTS
BAR ON THE POST FORT CAMPBELL, a/k/a
FROGGY'S SPORTS BAR, a/k/a FROGGY'S
SPORTS BAR & GRILL, a/k/a FROGGY'S                                       DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Docket #20). Defendants have responded (Docket #23) and filed a Counter Motion for Summary Judgment (Docket #24). Plaintiff has replied (Docket #25). This matter is now ripe for adjudication. For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED, and Defendants' Counter Motion for Summary Judgment is DENIED.

## BACKGROUND

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") distributes rights to pay-per-view events to commercial entities. Joe Hand's territory includes the State of Kentucky. Joe Hand was granted the right to commercially distribute the September 6, 2008, UFC #88 Program ("UFC Fight") via closed circuit television and encrypted satellite signal by the promoter, Zuffa, LLC. Joe Hand was also granted the right to "take any action reasonably necessary to pursue

civil or criminal claims against any commercial location which has been identified as pirating an UFC® broadcast . . . ." Plaintiff's Affidavit, Ex. 1. Pursuant to its agreement with Zuffa, LLC, Joe Hand entered into agreements with various commercial entities. For a fee, commercial establishments received an unscrambled signal which allowed them to show the UFC Fight. The UFC Fight was offered separately to private residences through cable or satellite providers (such as DirecTV).

Defendant Boney Knees, Inc. ("Boney Knees") is a duly authorized Kentucky corporation organized on or about July 20, 2005. In 2006, Boney Knees entered into a lease agreement with Morale, Welfare, & Recreation ("MWR"), a civilian branch of the Army, to operate "Froggy's Sports Bar & Grill" ("Froggy's") on the Fort Campbell, Kentucky, United States Army Base. As part of its lease agreement, Boney Knees agreed to provide sports programming on seventeen televisions at Froggy's. Boney Knees' President, Defendant Frank Young ("Young"), contacted a DirecTV employee or authorized agent to install satellite equipment at Froggy's. According to Young, the DirecTV employee or authorized agent asked Young if he wanted the bill for Froggy's to be combined with his home DirecTV bill. Young agreed to this arrangement, but asserts that he never directed any DirecTV employee or authorized agent to set up his Froggy's account as a residential account.

Boney Knees advertised in the Fort Campbell base newspaper that it would be showing the UFC Fight. On September 6, 2008, Boney Knees, by and through Young, ordered the UFC Fight by calling 1-800-DIRECTV and following the automated instructions. Boney Knees proceeded to show the UFC Fight on some or all of its seventeen television screens. Joe Hand hired Signal Auditing, Inc. to visit bars and restaurants in the Fort Campbell, Kentucky, area on

2

September 6, 2008, to determine whether commercial establishments were publicly displaying the UFC Fight without Joe Hand's authorization. One of those auditors, Lafayette Gwin, visited Froggy's and witnessed eleven television sets displaying the UFC Fight to approximately 76 individuals. Gwin videotaped his visit to Froggy's and turned this evidence over to Joe Hand. DirecTV's Vice President of its Fraud Management Department, Kent Mader, later verified that the UFC Fight shown at Froggy's was purchased at a residential rate on Young's residential account.

Joe Hand filed a complaint in this Court on August 28, 2009. Joe Hand alleges that Boney Knees and Young willfully violated 47 U.S.C. § 605 by showing the UFC Fight in their commercial establishment without authorization from Joe Hand. Boney Knees eventually closed Froggy's in 2009 and is now defunct. Joe Hand filed a motion for summary judgment on February 18, 2010. Boney Knees and Frank Young filed a counter-motion for summary judgment on March 24, 2010. The Court now considers these motions.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether

the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff alleges that Defendants violated § 605(a) of the Federal Communications Act by receiving satellite transmissions of the UFC Fight without Plaintiff's authorization. Section 605(a) provides in part:

> . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .

47 U.S.C. § 605(a). The Sixth Circuit has held that § 605(a) applies to satellite transmissions. *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 556, *3 (6th Cir. 1994) (table). In

4

addition, "[s]ection 605(e)(3)(A) provides a private right of action in favor of anyone aggrieved by a violation of § 605(a)." *DirecTV, Inc. v. Collins*, 2005 WL 5581762, *3 (S.D. Ohio 2005).

Defendants acknowledge that the UFC Fight was displayed on numerous television screens at Froggy's on September 6, 2008. Defendants also admit that they were not authorized by Plaintiff to show the UFC Fight in their commercial establishment. Defendants argue, however, that there is no evidence that they knowingly or willfully intercepted the UFC Fight, and therefore cannot be held liable under § 605(a). In contrast, Plaintiff asserts that intent is only relevant as to the amount of damages awarded under § 605(e).

United States Magistrate Judge James Gallas of the Northern District of Ohio addressed a similar case involving the same Plaintiff in 2009. *See Joe Hand Promotions, Inc. v. Easterling et al.*, 2009 WL 1767579 (N.D. Ohio 2009). In that case, the defendants showed a UFC fight through DirecTV on television screens at a bar and grill without authorization from Joe Hand. *Id.* at *2. An auditor observed the violation and reported it to Joe Hand. *Id.* The defendants argued that the director of the company "never represented the satellite service at the restaurant to be residential . . . ." *Id.* at *3. The Magistrate Judge held that a violation of § 605(a) is a "strict liability offense[ ] with no good faith defense." *Id.* at *4 (citing *Int'l Cablevision v. Sykes*, 997 F.2d 998, 1004 (2d Cir. 1993). "Intent is immaterial to liability, but 'intent is relevant to the calculation of plaintiff's remedies' with regard to the augmented amounts for liquidated damages for willful violations." *Id.* (quoting *Int'l Cablevision*, 997 F.2d at 1004; citing *Joe Hand Promotions, Inc. v. Williams*, 2009 WL 348294, *2 (W.D. Ky. 2009) ("[I]ntent is not a factor in establishing liability . . . .")).

In contrast, Defendants cite to *Garden City Boxing Club, Inc. v. Stone*, in which the

5

district court interpreted § 605(a) as follows:

> Although inartfully drafted, a careful reading of § 605(a) reveals that one violates the statute if he: (1) intercepts and publishes the contents of radio communications to any person; (2) receives interstate or foreign communications by radio, and uses such communications for his, or some other person's benefit; or (3) publishes or uses the contents of an intercepted radio communication for his, or some other person's benefit, *with the knowledge that the communication was intercepted.*

285 F. Supp. 2d 447, 450 (D. Del. 2003) (emphasis added). However, what the Delaware district court's opinion really points out is that there are three separate sentences in § 605(a) which provide distinct bases for liability. This is evident by the fact that the Delaware district court goes on in its opinion to explain that "the statute authorizes the court to adjust the award of damages for willful offenses and *unintentional violations* . . . ." *Id.* (emphasis added).

The Court finds that a majority of cases support Plaintiff's notion that a finding of intent, knowledge, or willfulness is not required for liability purposes. *See also DirecTV v. Crespin*, 224 Fed. App'x 741, 757 (10th Cir. 2007) ("§ 605(a) does not have an intent requirement."); *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911-12 (6th Cir. 2001) ("§ 605(e) designates varying penalties, depending on whether or not a violation of the section was willful."); *DirecTV, Inc. v. Walls*, 2009 WL 2255289, *2 (S.D. Ohio 2009) ("The Federal Communications Act does not require a knowing violation."). There is no genuine issue of material fact that Defendants violated the statute by exhibiting the UFC Fight in their commercial establishment without authorization from Plaintiff. Therefore, a finding of liability is appropriate.

Defendants argue that, if the Court finds them liable, Frank Young should not be held individually liable. Courts have held that in order to hold an officer, director or owner

vicariously liable in an individual capacity under § 605, the plaintiff "must show that [the director] had 'a right and ability to supervise the violations, and that she had a strong financial interest in such activities.'" *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) (quoting *J & J Sports Prods., Inc. v. Tonja Meyers, et al.*, 2007 WL 2030288, *3 (S.D.N.Y. 2007)); *accord Joe Hand Promotions, Inc. v. Blanchard*, 2010 WL 1838067, *3 (S.D. Ga. 2010) (citing *J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, *5 (M.D. Fla. 2009)); *J & J Sports Prods., Inc. v. L & J Group, LLC*, 2010 WL 816719, *1 (D. Md. 2010); *cf. Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 947-48 (8th Cir. 2007) (finding individual liability where there was "no distinction" between corporate officer's actions and those of the company). There is no genuine issue of material fact that Young had supervisory control over the DirecTV services, as he was the one who ordered the broadcast, and he also received financial benefit therefrom, as admitted in his discovery responses. Therefore, Young may be held individually liable.

Plaintiff's motion for summary judgment as to liability is granted. The issue of damages is to be decided by further briefing or by a hearing before the Court. A telephonic conference is hereby scheduled for **May 21, 2010** at **10:00 am.** The Court will place the call to counsel.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED, and Defendants' Counter-Motion for Summary Judgment is DENIED.

An appropriate order shall issue.