JOE HAND PROMOTIONS, INC., as
Broadcast Licensee of the September 6, 2008,
UFC #88 Broadcast                                                                PLAINTIFF

v.

FRANK YOUNG, Individually, and as officer,
director, shareholder and/or principal of
BONEY KNEES, INC., d/b/a FROGGY'S
SPORTS BAR ON THE POST FORT CAMPBELL,
a/k/a FROGGY'S SPORTS BAR, a/k/a FROGGY'S
SPORTS BAR & GRILL, a/k/a FROGGY'S, and
BONEY KNEES, INC., d/b/a FROGGY'S SPORTS
BAR ON THE POST FORT CAMPBELL, a/k/a
FROGGY'S SPORTS BAR, a/k/a FROGGY'S
SPORTS BAR & GRILL, a/k/a FROGGY'S                                      DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's Memorandum of Law in Support of

Damages (Docket #29). Defendants have submitted a Joint Memorandum of Law Regarding

Damages (Docket #30). This matter is now ripe for adjudication. For the following reasons, the

Court awards Plaintiff $4,800.00 in damages, and $3,460.50 in fees and costs.

## BACKGROUND

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") distributes rights to pay-per-view

events to commercial entities. Joe Hand's territory includes the State of Kentucky. Joe Hand

was granted the right to commercially distribute the September 6, 2008, UFC #88 Program

("UFC Fight") via closed circuit television and encrypted satellite signal by the promoter, Zuffa,

LLC. Joe Hand was also granted the right to "take any action reasonably necessary to pursue

civil or criminal claims against any commercial location which has been identified as pirating an

UFC® broadcast . . . ."  Plaintiff's Affidavit, Ex. 1.  Pursuant to its agreement with Zuffa, LLC, Joe Hand entered into agreements with various commercial entities.  For a fee, commercial establishments received an unscrambled signal which allowed them to show the UFC Fight.  The UFC Fight was offered separately to private residences through cable or satellite providers (such as DirecTV).

Defendant Boney Knees, Inc. ("Boney Knees") is a duly authorized Kentucky corporation organized on or about July 20, 2005.  In 2006, Boney Knees entered into a lease agreement with Morale, Welfare, & Recreation ("MWR"), a civilian branch of the Army, to operate "Froggy's Sports Bar & Grill" ("Froggy's") on the Fort Campbell, Kentucky, United States Army Base.  As part of its lease agreement, Boney Knees agreed to provide sports programming on seventeen televisions at Froggy's.  Boney Knees' President, Defendant Frank Young ("Young"), contacted a DirecTV employee or authorized agent to install satellite equipment at Froggy's.  According to Young, the DirecTV employee or authorized agent asked Young if he wanted the bill for Froggy's to be combined with his home DirecTV bill.  Young agreed to this arrangement, but asserts that he never directed any DirecTV employee or authorized agent to set up his Froggy's account as a residential account.

Boney Knees advertised in the Fort Campbell base newspaper that it would be showing the UFC Fight.  On September 6, 2008, Boney Knees, by and through Young, ordered the UFC Fight by calling 1-800-DIRECTV and following the automated instructions.  Boney Knees proceeded to show the UFC Fight on some or all of its seventeen television screens.  Joe Hand hired Signal Auditing, Inc. to visit bars and restaurants in the Fort Campbell, Kentucky, area on September 6, 2008, to determine whether commercial establishments were publicly displaying

the UFC Fight without Joe Hand's authorization. One of those auditors, Lafayette Gwin, visited Froggy's and witnessed eleven television sets displaying the UFC Fight to approximately 76 individuals. Gwin videotaped his visit to Froggy's and turned this evidence over to Joe Hand. DirecTV's Vice President of its Fraud Management Department, Kent Mader, later verified that the UFC Fight shown at Froggy's was purchased at a residential rate on Young's residential account.

Joe Hand filed a complaint in this Court on August 28, 2009. Joe Hand alleged that Boney Knees and Young willfully violated 47 U.S.C. § 605 by showing the UFC Fight in their commercial establishment without authorization from Joe Hand. Boney Knees eventually closed Froggy's in 2009 and is now defunct. Joe Hand filed a motion for summary judgment on February 18, 2010. Boney Knees and Frank Young filed a counter-motion for summary judgment on March 24, 2010. The Court granted summary judgment in favor of Joe Hand on May 14, 2010, and ordered the parties to brief the issue of damages. That issue is now before the Court.

## DISCUSSION

The Court's prior opinion held Defendants liable under section 605(a) of the Federal Communications Act, 47 U.S.C. § 605(a). Under section 605(e)(3)(A), "[a]ny person aggrieved by any violation of subsection (a) . . . may bring a civil action" to recover damages. 47 U.S.C. § 605(e)(3)(A). The Court may award actual damages, 47 U.S.C. § 605(e)(3)(C)(i)(I), or statutory damages, 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff has chosen to recover statutory damages. With regard to statutory damages, section 605 states as follows:

> [T]he party aggrieved may recover an award of statutory damages for each
> violation of subsection (a) of this section involved in the action in a sum of not

less than $1,000 or more than $10,000, as the court considers just . . . .

47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition,

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).  If the Court finds that Defendants were "not aware and had no reason to believe that [their] acts constituted a violation of this section," the Court may reduce statutory damages to not less than $250.  47 U.S.C. § 605(e)(3)(C)(iii).

## I.      Statutory Damages

Plaintiff requests the maximum amount of statutory damages available, i.e., $10,000. The amount awarded is left to the discretion of the Court.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages awarded "as the court considers just").  The Sixth Circuit upheld an award of $4,500 for a nonwillful violation where the evidence indicated that the plaintiff would have received $1,000 had the event been properly purchased, $1,785 was spent to investigate compliance, and $1,700 in administrative costs were necessary.  *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 918 (6th Cir. 2001).  Other courts have held that the number of patrons and size of the establishment are relevant to the determination of damages.  *See, e.g.*, *Integrated Sports Media, Inc. v. Naranjo*, No. 1:10-cv-00445-AWI-SMS, 2010 WL 3171182, *4-5 (E.D. Cal. Aug. 11, 2010).  Some courts set a flat sum.  *See, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001).

In this case, the illegal broadcast was displayed to approximately 76 patrons, who paid a $3.00 cover charge to watch the fight.  The broadcast was advertised and displayed on eleven

televisions. Defendants sold food and drink to the patrons. Additionally, Plaintiff spent considerable sums of money to employ investigators to find violators of its licensing agreement.

Several courts have awarded a fee based on a calculation of $50.00 per patron. *See, e.g.*, *Setanta Sports North America Ltd. v. Pickford*, No. 6:09-cv-818-Orl-28GJK, 2010 WL 2432088, *4 (M.D. Fla. May 21, 2010); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Given that the residential rate was $44.95 for the broadcast, and the cover per person was $3.00, the Court believes $50.00 per person is appropriate. In this case, this calculation amounts to $3,800.00. The Court also finds that an additional $1,000.00 in damages is appropriate because Defendants clearly profited from the illegal broadcast through the cover charge and sale of food and drinks. Accordingly, Plaintiff is entitled to $4,800.00. This amount is just and serves to deter future violations.

## II.    Willfulness

Plaintiff also urges the Court to increase the amount of damages because Defendants' acts were willful and for purposes of financial gain. There is no dispute that Defendants profited from their broadcast of the UFC Fight. Therefore, the Court need only determine if Defendants' acts were willful, and merit enhanced damages.

In civil cases, the Supreme Court has held that "willful" amounts to showing "disregard for the governing statute and an indifference to its requirements." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) (citing *United States v. Ill. Central R. Co.*, 303 U.S. 239, 242-43 (1938)). In the context of section 605, district courts have found willful violations where there were repeated violations or "sophisticated understanding of the satellite programming industry . . . ." *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08 CV 1259, 2009 WL 1767579,

*6 n. 2 (N.D. Ohio June 22, 2009).

Plaintiff argues that Defendants' conduct was willful because Defendants had a commercial account and were therefore aware of the process of lawfully ordering a program for a commercial establishment. Instead, Defendants ordered the program through Frank Young's residential account "in an effort to avoid commercial subscription rates." Plaintiff also notes that Defendants admit liability insofar as acknowledging that the UFC Fight was broadcast illegally.

The Court first notes that this is Defendants' first and only violation of section 605(a). Therefore, there is no evidence of repeat violations, and this cannot support a finding of willfulness. Plaintiff's argument appears to assert that Defendants had a sophisticated understanding of satellite programming because they had a residential and commercial account and, thus, knew the difference between the two. Defendants' evidence, however, refutes this notion. Defendants hired DirecTV to set up a commercial account at Froggy's, and played no part in the selection or installation of that equipment. By all accounts, Frank Young merely told the DirecTV employee to combine the bill for Froggy's with the bill for his residential account. There is no evidence that he wanted the Froggy's account to be billed as "residential." To refute Mr. Young's story, Plaintiff has presented mere assertions as to Defendants' true intentions rather than any substantial evidence. Nor is there any showing of egregious action. *See, e.g.*, *Buckeye Cablevision, Inc. v. Sledge*, No. 3:03CV7561, *3 (N.D. Ohio Apr. 8, 2004); *Joe Hand Promotions v. Burg's Lounge*, 955 F. Supp. 42, 44 (E.D. Pa. 1997) (finding $20,000 "unwarranted in the absence of evidence suggesting especially egregious circumstances").

Accordingly, the Court does not find willfulness on the part of Defendants, and an enhancement of damages is unwarranted.

### III.    Fees and Costs

The Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks $350.00 in filing fees and $3,110.50 in attorneys' fees. Plaintiff's attorneys' fees were calculated at $200.00 per hour for attorney time and $75.00 for paralegal time, for a total of 13.49 hours of attorney time and 5.50 hours of paralegal time. Paralegal fees are generally included in a calculation of attorneys' fees. *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 128 S.Ct. 2007, 2014 (2008). The Court has reviewed Plaintiff's submitted documentation and believes that the fees sought are reasonable. Accordingly, Plaintiff is entitled to recover $3,460.50 in fees and costs.

## CONCLUSION

For the foregoing reasons, the Court awards Plaintiff damages in the amount of $4,800.00, and $3,460.50 in fees and costs.

A final and appealable judgment shall issue.